**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT LEE BROCK, a/k/a Two Souls
Walker,
<u>Plaintiff-Appellant,</u>

v.                                                                              No. 96-6116

RONALD ANGELONE,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CA-95-1194-2)

Submitted: May 16, 1996

Decided: February 4, 1997

Before RUSSELL, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Sanctions imposed by published per curiam opinion.

_____

**COUNSEL**

Robert Lee Brock, Appellant Pro Se.

_____

**OPINION**

PER CURIAM:

Appellant, Robert Lee Brock, a.k.a. Two Souls Walker, a Virginia
inmate, lodged twenty-nine appeals before this court in 1995-96

alone, making him one of, if not the most frequent litigants in this circuit. Virtually all of Brock's actions originate as complaints under 42 U.S.C. § 1983, in which Brock complains about some aspect of prison conditions. None of Brock's allegations have ever been found by any court to have any merit. Because Brock's repeated, frivolous claims have placed a significant burden on this court, as well as on the district court, we ordered Brock on May 16, 1996, to show cause why he should not be sanctioned for filing this most recent appeal. Having reviewed his response, we hereby impose sanctions upon Brock pursuant to Federal Rule of Appellate Procedure 38.

Brock has a history of filing frivolous appeals in an apparent effort to undermine the legal system that incarcerated him. Over the course of his litigious history, Brock has complained about all aspects of his legal treatment and prison conditions including, inter alia, food, clothing, access to and the poor condition of the prison's law library, mail delivery, hot water, improper placement of a mirror for the handicapped, phones, canteen needs, art supplies, mental stress, and the price of coffee. One of Brock's earlier appeals, filed when Brock only had 30 section 1983 claims pending in various courts, requested "$1 million dollars for mental cruelty and cruel and unusual punishment" because the prison nurses said "no" when Brock requested that his meals contain "extra meat" or "vitamins in place of vegetables." Brock v. Harrison, No. 2:95 Civ. 507 (E.D. Va. May 16, 1995). The district court dismissed this case as frivolous. Brock responded by bringing numerous additional suits, including a section 1983 claim against the victim of the crime for which Brock had been incarcerated. See Brock v. Speck, No. 2:95 Civ. 800 (E.D. Va. Sept. 14, 1995). The district court again dismissed the case. Id . On the same day, the district court dismissed yet another section 1983 case filed by Brock based upon Brock's dissatisfaction with the manner in which the prison officials responded to Brock's grievances. See Brock v. Smith, No. 2:95 Civ. 465 (E.D. Va. Sept. 14, 1995).

In response to Brock's salvo of petitions, the district court ordered Brock on September 15, 1995, to show cause why a system of pre-filing review should not be instituted by any action filed by Brock. Brock responded only by asserting that "he is incarcerated for a crime he did not commit and that someone should pay for this." Brock v. Robertson, No. 2:95 Civ. 891 (E.D. Va. September 29, 1995). The

2

district court found Brock's objection meritless and ordered Brock to submit his future complaints for pre-filing review, allowing to be filed only those claims found to be made in good faith and not frivolous. Id. The pre-filing review system apparently failed to deter Brock, who responded by trying to bring yet another section 1983 claim, requesting inter alia reconsideration of all his previous cases and $72,000,000.00 in damages, against the district court judge that had presided over many of Brock's claims. See Brock v. Smith, No. 2:95mc40 (E.D. Va. Oct. 26, 1995). The district court reviewed the complaint and returned it to Brock unfiled. Id .

Brock later filed another section 1983 petition because he had been "housed with black men," and was "incarcerated two hundred miles from his family." Brock v. Virginia Dept. of Correct., No. 2.95mc45 (E.D. Va. Nov. 14, 1995). Brock also complained that a prison counselor "recommended that he take job training and AA classes" and "that the prison [would] not give him extra meat," along with numerous other similar alleged rights violations. Id . The district court ordered this complaint to be returned to Brock unfiled, as well.

In addition to these cases, Brock has filed numerous other section 1983 claims, motions for reconsideration, and appeals to this circuit. Virtually all of Brock's filings include a litany of claims, each of which requires a response. For example, one of plaintiff's section 1983 actions complained of a laundry list of prison wrongs and requested "a change of Department policy, intervention by the [federal] courts, establishment of new state and federal laws and $82,000.27." Id. (emphasis added). In his motion for reconsideration of the district court's dismissal of that case, Brock explained that he did not want to bring his claim under section 1983 and requested that the court "file it under `any applicable court title and code of law,'" thus requiring the court to examine his laundry list of grievances for any possible claim under any federal or state law. Id.

Brock's instant section 1983 claim is typical of the claims with which he has burdened the courts of this circuit over the past several years. Here, Brock alleges that he is "either being poisoned or experimented on" because one of the ingredients listed on the side of the bottle of pancake syrup served at his prison is propylene glycol, which petitioner notes is also used in deodorant and antifreeze. Brock

3

attempted to evade the pre-filing judicial review imposed on him by the District Court in the Eastern District of Virginia by filing his action in the Western District of Virginia. This, even though Brock stated in his complaint that he was aware the Western District did not have jurisdiction, and even though he was aware that all events giving rise to the claim occurred in the Eastern District of Virginia where petitioner has filed each of his numerous previous petitions. His action was transferred to the Eastern district.

Even though Brock's claim on its face is at best fanciful or delusional, and more likely simply a deliberate affront to the judicial system, the district court thoroughly researched Brock's claim and found it to be frivolous. As the district court noted:

> Propylene glycol is a common extract used in cough syrup, pancake syrup and coffee flavoring. See Coffee, Perking Up a Workaholic City, THE WASHINGTON POST, December 19, 1994, at C1. It is a sweet viscous substance used to hold ingredients together. The fact that this substance is used in antifreeze does not make it poisonous. In fact, cat owners, whose cats like to hide under the car, have been advised to use antifreezes containing propylene glycol because they are not toxic. Protecting Your Pets from Yard-Pest Poisons, Plain Dealer, July 13, 1995, at 10E. Plaintiff is clearly not being poisoned or experimented on.

Brock v. Angelone, No. 2:95cv1194 (E.D. Va. Dec. 22, 1995). Petitioner's claim is obviously frivolous for numerous additional reasons, not the least of which is that Brock nowhere alleges that anyone at the prison forced or in any way coerced him to consume the "poisonous" syrup. Brock's litigation over pancake syrup in the face of the court's pre-filing review system and threat of sanctions has shown that neither can serve as an effective deterrent.

Under F.R.A.P. 38, we are authorized to impose sanctions upon appellants for the filing of frivolous appeals. Bast v. Cohen, Dunn & Sinclair, PC, 59 F.3d 492 (4th Cir. 1995). F.R.A.P. 38 provides:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the

4

court and reasonable opportunity to respond, award just
damages and single or double costs to the appellee.

Such "just damages" and "costs," include"damages, attorney's fees
and other expenses incurred by an appellee if the appeal is frivolous,"
regardless of whether "the appeal resulted in delay." F.R.A.P. 38,
Advisory Committee Notes. We are authorized to award such dam-
ages and costs "in [our] discretion in the case of a frivolous appeal
as a matter of justice to the appellee and as a penalty against the
appellant." Id.

Here, we ordered appellant to show cause as to why he should not
be sanctioned for filing a frivolous appeal, thereby providing him
with "notice from the court and reasonable opportunity to respond."
F.R.A.P. 38. Having reviewed the appellant's response to our order,
we now conclude that the appeal was indeed "frivolous," and there-
fore impose the following sanctions upon the appellant. In lieu of par-
ticularized fees and costs, we award the amount of $500 to the
appellees, as we have frequently done in similar circumstances. See,
e.g., Peeples v. Commissioner of Internal Revenue, No. 87-1053 (4th
Cir. Sept. 23, 1987) (unpublished); Leining v. Commissioner, No. 86-
1253 (4th Cir. July 21, 1987) (unpublished); United States v. Bowser,
No. 86-1241 (4th Cir. April 22, 1987) (unpublished); United States v.
Wissig, No. 86-1188 (4th Cir. Dec. 29, 1986) (unpublished);
Chapman v. Egger, No. 86-2151 (4th Cir. Oct. 21, 1986) (unpub-
lished); Jensen v. United States, No. 86-1504 (4th Cir. June 25, 1986)
(unpublished), motion for accounting and cert . denied, 479 U.S. 924
(Oct. 20, 1986). This money shall be payable to the Warden of the
Haynesville Correctional Center in his official capacity. Additionally,
following a practice adopted in one of our sister circuits, we enjoin
appellant from filing any further civil appeals in this court until these
monetary sanctions are paid, and unless a district court judge certifies
that his claim is not frivolous. See Smith v. McCleod, 946 F.2d 417,
418 (5th Cir. 1991) (ordering that petitioner "be barred from filing
any further appeals in this court until (1) the sanctions awarded by
this court and the district court are fully paid; and (2) a district court
certifies his appeal as having some arguable merit"); cf. Shief v.
Kakita, 116 S. Ct. 1311 (1996) (directing "the Clerk not to accept any
further petitions for certiorari from [appellant] in noncriminal matters
unless he pays the docketing fee required by [Supreme Court] Rule

5

38 and submits his petition in compliance with [Supreme Court] Rule 33.1"); <u>Jones</u> v. <u>ABC-TV</u>, 116 S. Ct. 870 (1996) (same); <u>Attwood</u> v. <u>Singletary</u>, 116 S. Ct. 769 (1996) (same); <u>Whitaker</u> v. <u>Superior Court of California, San Francisco County</u>, 115 S. Ct. 1446 (1995) (same).

<u>It is so ordered</u>

6